F I L E D
CLERK OF COURT

2024 JUL 10 PM 1: 20

SUPERIOR COURT
OF GUAM

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM**<br><br>v.<br><br>**EDWARD ACE SICAT aka KIM,**<br><br>DOB: 09/06/1992<br><br><br><br>Defendant. | **CRIMINAL CASE NO. CF0487-20**<br><br><br>**DECISION AND ORDER RE: COMPETENCY ISSUES AND SECOND FORENSIC EVALUATION** |

This matter came before the Honorable Dana A. Gutierrez on March 14, 2024, and again on April 12, 2024, for a Competency Hearing for Defendant Edward Ace Sicat ("Sicat"). At the hearings, Attorney Michael F. Phillips appeared on behalf of Sicat, and Assistant Attorney General Christine S. Tenorio appeared on behalf of the People of Guam ("People"). Public Defender Stephen P. Hattori also represents Sicat in this matter.[1] After review of the evidence, hearing the arguments of counsel, and based on applicable law, the Court finds that Sicat did not lack substantial capacity at the time of the alleged offenses. However, Sicat has requested additional forensic evaluation as to his present competency to be proceeded against at trial. The Court agrees that the issues he raises were not fully addressed in his prior forensic evaluation. Therefore, the Court **ORDERS** a second forensic evaluation, limited to the specific questions addressed below.

---

[1] Public Defender Hattori was present at the March 14, 2024 hearing, but was not present at the April 12, 2024 hearing.

## BACKGROUND

### A.     First Forensic Evaluation

This case has been before the Court since September 2020, and numerous trial dates have been scheduled and vacated. *See* Dec. & Order at 1-5 (July 20, 2023). On October 4, 2023, Sicat's counsel filed a Motion *in limine* for Hearing on Defendant's Competency to be Proceeded Against, which raised Sicat's apparent "inability to meaningfully understand the nature of the proceedings, assist and cooperate with his counsel, follow the evidence, or participate in his defense." *Id.* at 6; *see also* Decl. Michael F. Phillips at 2 (Oct. 4, 2023) ("The Defendant is completely unable to assist or cooperate with defense counsel. We are not able to have a productive conversation with the Defendant about anything involving the facts of his case or upcoming trial."). The Court ordered Sicat to undergo a forensic evaluation, and for the examiner to provide the following:

1) An opinion as to the defendant's competency to be proceeded against, together with the reasons and basis for the opinion.
2) An opinion as to the defendant's competency to be sentenced, together with the reasons and basis for the opinion.
3) An opinion as to whether or not the defendant was suffering from any mental illness, disease or defect at the time of the conduct alleged to have constituted the offense charged against the defendant and whether, as result thereof, he lacked substantial capacity to know or understand what he was doing, or to know or understand that his conduct was wrongful or to control his actions, or to the extent to which, as a consequence of mental illness, disease, or defect, the defendant did or did not have a state of mind relevant to any issue in the trial of action.

Order for Forensic Evaluation at 2 (Oct. 5, 2023). Separately, at the request of Sicat's counsel, the Court ordered that a Tagalog interpreter be present to assist Sicat at the forensic evaluation.[2]

---

[2] Although this case has been pending for several years, Sicat did not raise the issue of his English proficiency until fall 2023. Sicat's counsel has stated that although Sicat can speak some English, he needs assistance understanding

On November 7, 2023, Dr. Juan Rapadas, a Clinical Psychologist with the Judiciary of Guam's Client Services and Family Counseling Division ("CSFC"), performed a forensic evaluation on Sicat. A Tagalog interpreter was initially present as ordered for the forensic evaluation. However, Sicat informed Dr. Rapadas that he did not need the interpreter after all. The interpreter was then dismissed, and the forensic evaluation proceeded in English.[3]

### B. Dr. Rapadas's Report

On November 17, 2023, Dr. Rapadas produced his written report (hereafter, "Rapadas Report"), which provided information about his forensic evaluation of Sicat. Dr. Rapadas found that Sicat was "very cooperative when questioned," and "[i]t was easy to get him to talk." Rapadas Report at 2 (Nov. 17, 2023). Dr. Rapadas found that Sicat was "oriented to person, time, place, reason for testing, and object," and "could articulate specifically why he was being evaluated or why I was seeing him." *Id.* at 3. He also found that Sicat's thought processes were "organized," and that his thoughts were "never confused, delusional or bizarre for the better part of the forensic interview." *Id.* at 4. Dr. Rapadas administered Sicat the Mini Mental Status Examination (MMSE). On the MMSE, a score of 30 is perfect, while a score of 23 or less suggests an individual "may have signs of dementia and poor cognitive skills." *Id.* Sicat scored a perfect 30/30. *Id.*

---

legal terminology and concepts. This is consistent with what the Court-provided interpreter relayed to the Court at the April 12, 2024 hearing: that Sicat "understands some of the stuff; what he doesn't understand is some of the technical terms." Min. Entry, 10:10 AM (Apr. 12, 2024). The People have not objected to Sicat's use of an interpreter. *See id.* at 10:14 AM (Prosecutor: "[Sicat] can be furnished an interpreter, if he needs it, for the technical terms.").

[3] On April 12, 2024, Sicat's counsel proffered that Sicat had dismissed the Tagalog interpreter from the forensic evaluation because Sicat knew that this particular interpreter has a close personal relationship with one of the primary witnesses in this case. Sicat's counsel asserted that when Sicat told Dr. Rapadas that he did not need an interpreter, this was a "white lie;" instead, according to counsel, the real reason Sicat dismissed the interpreter was because of his personal concern with that individual. Min. Entry at 10:18 AM (Apr. 12, 2024).

Based on his observations of Sicat, Dr. Rapadas concluded that Sicat "does not have a severe mental disorder that would directly cause him to lack substantial mental capacity to know or understand what he was doing, to know or understand that his conduct was wrongful, or to control his actions, under any circumstances in his past and present behaviors." Rapadas Report at 6. Dr. Rapadas also concluded that Sicat was competent to be proceeded against at present. After citing to U.S. Supreme Court precedent on the issue, Dr Rapadas opined that Sicat "seem[s] to possess the ability to consult [with his attorney] with a good degree of rational understanding" and "seems capable of testifying appropriately." *Id.* at 5.

Notwithstanding his competency findings, Dr. Rapadas did note that Sicat appeared to be "suffering some level of depression, anxiety, and feelings of being targeted." *Id.* at 6. He also noted that Sicat had self-reported the following:

> The way [Sicat] was being treated [at home] resulted in severe panic attacks, hyperventilation, and being unable to breathe. This often results in him being frozen and sometimes unable to move or accomplish anything. This made him seek medication which he said was primarily an anti-anxiety pill. He did not mention if he was currently receiving any psychotherapy services.

*Id.* at 3.

## C.    Competency Hearings and Testimony

On March 14, 2024, the Court held a Competency Hearing and received testimony from Dr. Rapadas. On direct examination by the People, Dr. Rapadas reaffirmed his conclusions that Sicat did not lack substantial capacity at the time of the alleged offenses and that Sicat was currently competent to be proceeded against.

On cross-examination, Sicat's counsel challenged Dr. Rapadas's conclusion that Sicat is currently competent to be proceeded against at trial. Sicat's counsel argued that Dr. Rapadas had noted that Sicat has an anxiety disorder and medicates for that disorder, but Dr. Rapadas did not

sufficiently explore those issues in his forensic evaluation. Dr. Rapadas explained that the references in his report to Sicat's anxiety and medication only reflected Sicat's self-reporting, not Dr. Rapadas's personal diagnosis of Sicat. Min. Entry at 2:52 PM (Mar. 14, 2024). Dr. Rapadas further explained that since he was "not [Sicat's] clinician [and] not his doctor," he could not "100% agree" whether Sicat's self-reporting was accurate. *Id.* Instead, Dr. Rapadas explained that he had noted Sicat's self-reported symptoms and diagnoses in his report only "for context," and that in any case "a diagnosis doesn't necessarily mean [in]competency." *Id.* at 4:44 PM.

Dr. Rapadas did note that Sicat appeared to be "anxious" during the forensic evaluation. *Id.* at 2:47 PM. Despite this, Dr. Rapadas found that Sicat "was still able to talk to me and tell me about what's happening, what's going on," and that while Sicat "was pretty shaken, we were able to talk through it." *Id.* at 2:52 PM. Still, Dr. Rapadas conceded that during the forensic evaluation, he didn't think specifically about whether Sicat "was going to freeze up in court," or experience similar symptoms. *Id.* at 2:50 PM. Dr. Rapadas agreed, as a hypothetical matter, to counsel's suggestion "that if somebody's frozen . . . that it is possible, [the defendant] could be unable to communicate with defense counsel." *Id.* at 3:03 PM. However, Dr. Rapadas refused to conclude that this would happen in this case; he insisted that it would be "overgeneralizing" to make that assumption, as "[w]hen you have anxiety, it doesn't [always] mean you cannot communicate." *Id.* at 2:50-51 PM. Thus, Dr. Rapadas testified that could not "make a blanket statement" that Sicat "couldn't talk to," or "couldn't work with," defense counsel. *Id.* at 2:55 PM.

Dr. Rapadas conceded that he did not review Sicat's medical records before or during the forensic evaluation. *Id.* at 2:54 PM. This was in part because the Guam Behavioral Health and Wellness Center did not have any records for Sicat. *See* Rapadas Report at 2. Dr. Rapadas could

5

not recall whether Sicat presented him, or offered to present him, with any other medical records. *Id.* at 2:53 PM. Instead, Dr. Rapadas accepted Sicat's self-representation that he has an anxiety disorder and takes Bromazepam on an as-needed basis for anxiety. Dr. Rapadas testified that he was familiar with Bromazepam, which he explained is prescribed as a "central nervous system relaxant" for people suffering from anxiety. *Id.* at 2:53 PM. Dr. Rapadas explained that from what he knows, Bromazepam can have the side effect of making someone "drowsy" and that it "might" have an impact on cognitive functions. *Id.* at 3:08 PM. He later suggested there were alternative medicines, such as Zoloft, that could be prescribed for someone who experiences heavy side effects from Bromazepam. *Id.* at 4:42 PM.

Because the initial hearing ran late, the Court continued the hearing to April 12, 2024. At the later hearing, Sicat's counsel argued to the Court that Sicat's apparent anxiety disorder, and his use of Bromazepam, could lead him to freeze up at trial, and therefore render him unable to assist in his defense. Sicat's counsel argued, in effect, that Dr. Rapadas's competency determination was insufficient because it did not fully account for that possibility, and that further evaluation was needed. The Court asked Sicat's counsel whether he was advocating for Sicat to be sent back to Dr. Rapadas, specifically; counsel appeared to answer in the affirmative. Min. Entry at 10:25-10:27 AM (Apr. 12, 2024).[4] The People did not object to additional forensic

---

[4] THE COURT: . . . you're saying, if [Dr. Rapadas] was to be given that information, he could evaluate it and maybe have a different . . .
DEFENSE COUNSEL: Sure.
THE COURT: . . . or more information for the Court, to assist the Court, is that...?
DEFENSE COUNSEL: Yes, your honor, and based on [Dr. Rapadas's] testimony, he said . . . we're asking the witness, who is the only expert, to look into that[.]

Min. Entry at 10:26-10:27 AM (Apr. 12, 2024).

evaluation, though they argued that it was unnecessary as a matter of law.[5] *Id.* at 10:31 AM. The Court then took the matter under advisement.

**DISCUSSION**

### A.     Sicat Did Not Lack Substantial Capacity at the Time of the Alleged Offenses

The Court first addresses Sicat's capacity *at the time of the alleged offenses.* Guam law provides that "a person is not criminally responsible for conduct if *at the time of such conduct,* as a result of mental illness, disease or defect, he lacked substantial capacity to know or understand what he was doing, or to know or understand that his conduct was wrongful, or to control his actions." 9 GCA § 7.16 (emphasis added).

Dr. Rapadas opined in his written report that Sicat "does not have a severe mental disorder that would directly cause him to lack substantial mental capacity to know or understand what he was doing, to know or understand that his conduct was wrongful, or to control his actions, under any circumstances in his past and present behaviors." Rapadas Report at 6. Dr. Rapadas's testimony at the March 14, 2024 Competency Hearing reaffirmed this prior conclusion. The Court finds Dr. Rapadas's testimony on this point credible and logical based on the specific observations Dr. Rapadas made of Sicat during the forensic evaluation.

"Mental illness, disease or defect, precluding responsibility, is an affirmative defense which the defendant must prove by a preponderance of the evidence." 9 GCA § 7.22(a). Sicat has presented no evidence to overcome Dr. Rapadas's testimony. Sicat has therefore failed to

---

[5] The People argued that further clarification from Dr. Rapadas was unnecessary because even assuming Sicat suffers from "debilitating anxiety attacks," such ailments (and the medication prescribed for such ailments) do not affect a defendant's competency to be proceeded against. Min. Entry at 10:14-10:16 AM (Apr. 12, 2024). The People suggested that should Sicat suffer from a panic attack at trial, the proper remedy would be to dismiss him from the courtroom until the panic attack subsided. *Id.* at 10:15 AM. The People also requested to submit a brief on how other courts have resolved similar issues. *Id.* at 10:34 AM. The Court declined to order briefing at that time because it wanted to first determine whether there was a need for additional forensic evaluation, although the Court did not rule out the possibility of ordering briefing at a later date. *Id.* at 10:40-10:41 AM.

meet his burden under 9 GCA § 7.16. The Court therefore finds that Sicat did not lack substantial capacity at the time of his alleged offenses.[6]

**B.      The Court Makes No Finding About Sicat's Present Competency, as There Remains a Question to be Resolved**

Whether or not a defendant lacked substantial capacity *at the time of the offense*, there is a separate question as to whether the defendant is incompetent to be proceeded against *at trial*. "A defendant is incompetent to be proceeded against in a criminal action if, as a result of mental illness, disease, or defect, he is unable (1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense. 9 GCA § 7.37(a)(1)-(4). In general, the "test for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." *People v. Guerrero*, 2001 Guam 19 ¶ 33 (quoting *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985)); *see Dusky v. United States*, 362 U.S. 400, 402 (1960).

Although the Court respects Dr. Rapadas's opinion that Sicat is competent to stand trial, the determination of competency is ultimately committed to the Court. *See United States v. Weston*, 36 F.Supp.2d 7, 9 (D.D.C. 1999) ("[I]t is the duty of the District Court to make a specific judicial determination of competence to stand trial, rather than accept psychiatric advice as determinative on this issue."). Having considered all the evidence before it, the Court finds that further information is necessary before making a determination of Sicat's current competency to stand trial. As Dr. Rapadas conceded, he did not review Sicat's full medical

---

[6] This finding does not preclude Sicat from making a diminished capacity argument at trial if he so chooses. 9 GCA § 7.43(g); *see People v. Jung*, 2001 Guam 15 ¶ 31 ("Diminished capacity is a concept separate and distinct from the defense of insanity."); *State v. Gough*, 768 P.2d 1028, 1029-30 (Wash. Ct. App. 1989) (explaining distinctions between insanity and diminished capacity).

history prior to or during the forensic evaluation. His conclusion about Sicat's present competency is therefore incomplete for the Court's purposes, as it does not account for whether Sicat's mental conditions, and/or his use of Bromazepam, may render him "drowsy" or "frozen" at trial, and thus unable to assist in his defense.

Under these circumstances, the Court will exercise its power under 9 GCA § 7.25(b)[7] to order a second forensic evaluation, to be performed by another examiner. Although Sicat did not object to being sent back to Dr. Rapadas, it would be more helpful to the Court to receive a second opinion from an examiner who has not already formed an opinion about Sicat's competency.

## CONCLUSION AND ORDER

The Court **ORDERS** CSFC to schedule a second forensic evaluation for Sicat by another examiner, who shall (1) evaluate the medical history that Sicat provides, if any, and (2) evaluate Sicat's current medication regimen, if any. The examiner shall thereafter produce a written report which addresses whether **Sicat's medical history, and/or his current medication regimen, render him incompetent to be proceeded against under 9 GCA § 7.37(a)(1)-(4).** In other words, whether Sicat is unable, as a result of mental illness, disease, or defect, to (1) understand the nature of the proceedings, (2) assist and cooperate with counsel, (3) follow the evidence, and/or (4) to participate in his defense.

---

[7] *"Whenever, in the opinion of the court,* any other expert evidence concerning the defendant's mental condition is, or will be required by the court . . . the court shall appoint one or more such experts to examine the defendant and to report upon his mental condition as the court may direct." 9 GCA § 7.25(b) (emphasis added); *see People of Guam v. Kyle Richard Murray,* Criminal Case No. CF0702-22, Dec. & Order at 17 (Nov. 16, 2023); *People of Guam v. Stan Matthew Ricalde,* Criminal Case No. CF0149-22, Dec. & Order at 4 (Aug. 30, 2022); *People of Guam v. William Meno Perez,* Criminal Case No. CF0445-16, Dec. & Order at 2-4 (Aug. 23, 2017).

The Court further **ORDERS** Sicat to bring to his second forensic evaluation any documentation of his medical and medication history that is relevant to this inquiry, and Sicat's attorney shall provide a copy of all such documentation to the People. *See* 9 GCA § 7.25(f).

The Court shall issue a separate order to Client Services and Family Counseling for a second forensic evaluation to be performed on the limited issue of Sicat's competency to be proceeded against at trial.

**SO ORDERED**: ___JUL 11 2024___

<br>

_____
**HONORABLE DANA A. GUTIÉRREZ**
Judge, Superior Court of Guam